United States District Court
Southern District of Texas
**ENTERED**
June 27, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SAIDUL HASSAN QUAZI, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-002257 |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits, Plaintiff Saidul Hassan Quazi filed a Motion for Summary Judgment [Doc. # 10] and a memorandum in support [Doc. # 11]. Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, also filed a Motion for Summary Judgment [Doc. # 12] and supporting brief. The motions now are ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that summary judgment should be **granted** for Defendant.

## I. BACKGROUND

### A. Procedural Background

Quazi filed an application for disability benefits with the Social Security Administration ("SSA") on June 27, 2012, alleging disability beginning on June 5,

2012.  After the claim was denied initially and on reconsideration, Quazi requested

an administrative hearing before an Administrative Law Judge ("ALJ") to review the

denial of benefits.

On October 31, 2013, ALJ Susan J. Soddy held a hearing in Houston, Texas.

Administrative Record [Doc. # 8] ("R.") 30-53.[1]  A vocational expert appeared and

testified.  Quazi was represented by counsel.  On January 29, 2014, the ALJ issued a

decision finding that Quazi was not disabled during the relevant period.  R. 13-27.

On June 4, 2015, the Appeals Council denied Plaintiff's request for review.  R.

1-6.  Quazi filed this case on August 6, 2015, seeking judicial review of the

Commissioner's denial of his claim for benefits.  Complaint [Doc. # 1].

### B.   **Factual Background**

Quazi filed for disability benefits alleging disability based on his heart

condition and other impairments.   Plaintiff has a lengthy work history as a senior

sales manager for an insurance company from 1996-2012, a position in which he

supervised seven employees.

The relevant period for his application for benefits is from June 5, 2012 (his

alleged onset date) through January 29, 2014 (the date of the ALJ's decision).  Before

---

[1]    Throughout this Memorandum, cites to pages in the Administrative Record refer to
the page numbers in the bottom right corner of each page.

the relevant period, Plaintiff had myocardial infarctions (heart attacks) in 2005 and 2008.  He has been treated by Mohammad A. Haque, M.D., a family practitioner, since at least 2007.  R. 365-439 (Dr. Haque's records from 2007 through 2013).

On March 30, 2012, several months before the relevant period, Dr. Haque saw Plaintiff for a follow-up visit and refilled Plaintiff's medications for coronary artery disease, hypertension, cholesterol, and other medical conditions.  R. 375-76.  The records reflect "unstable angina" and that Plaintiff "refuse[d] to go to [the] hospital." R. 375.[2]  However, the Court notes that this notation regarding refusal to go to the hospital repeats throughout Dr. Haque's records, and the actual date of such refusal by Plaintiff, or the original entry into the medical records, is unclear.  *See*, *e.g.*, R. 390 (same notation on December 13, 2010); R. 365 (same notation on September 4, 2013).

Plaintiff states that he stopped working on June 5, 2012, because of his medical condition.  R. 136.  On that same day, Plaintiff saw Dr. Haque and complained of intermittent mild chest pain over two days.  Dr. Haque prescribed refills of Plaintiff's medications.  The record again repeats that Plaintiff "refuse[d] to go to hospital."  R. 372-73.

---

[2]     *See* U.S. National Library of Medicine, National Institutes of Health, MEDICAL ENCYCLOPEDIA, https://www.nlm.nih.gov/medlineplus/ency/article/000201.htm (last visited June 27, 2016) ("Unstable angina is a condition in which your heart doesn't get enough blood flow and oxygen. It may lead to a heart attack").

On June 20, 2012, Plaintiff began treatment with Dr. Paresh Patel, a cardiologist at Houston Metropolitan Cardiology.  R. 255-57.[3]  Plaintiff reported that, for the past two weeks, he had symptoms of chest pain, fatigue, near syncope, palpitations, and dyspnea (labored breathing) upon exertion.  Dr. Patel recommended admission to the hospital for urgent catheterization.  The records state that Plaintiff declined admission that day and preferred having the catheterization as an outpatient procedure the following Monday, due to a previous engagement.  They further state that Plaintiff understood the risk in delaying the procedure.  R. 256.  Dr. Patel performed the catheterization on July 12, 2012.  R. 222-246.

On July 16, 2012, Plaintiff had a follow up appointment with Dr. Patel.   R. 252-53.  Dr. Patel stated that the catheterization procedure revealed "severe stenosis" and that Plaintiff had been treated with two stents.  After the procedure, Plaintiff continued to complain of fatigue and exertional shortness of breath, but denied exertional chest pains, palpitations, and syncope.  R. 252.  Dr. Patel prescribed medications and instructed Plaintiff to follow up in four weeks.  His notes further state, "[G]ive [Plaintiff] work release letter to return after next [follow-up] visit."  R. 253.

In August 2012, Plaintiff received External Counterpulsation ("ECP")

---

[3]     Dr. Haque apparently referred Plaintiff to Dr. Patel.  R. 252.

treatments for angina pursuant to a prescription from Glover Johnson, M.D, a cardiologist at Non-Invasive Cardiovascular, P.A.  R. 260-90; R. 281 (prescription from Dr. Johnson).  On August 7, 2012, Dr. Johnson signed a form stating that Plaintiff could not return to work and listed the work restriction's duration as "indefinite."  R. 292.  Plaintiff continued the ECP treatments in September and October.  R. 293-300.

The record contains no indication that Plaintiff received any medical treatment between October 2012 and April 2013.  However, the record for this period contains various assessments of Plaintiff's work capacity.

In October 2012, Disability Determination Services ("DDS") assessed Plaintiff's capacity to perform various work-related tasks.  Karen Lee, M.D., a DDS physician who reviewed Plaintiff's medical records, concluded that Plaintiff could stand or walk at least two hours in an eight-hour workday, and could sit for six of those eight hours.  R. 305-12.  Dr. Lee stated, "Although [Plaintiff's] [diagnosis] is always given as '[heart disease] with unstable angina' he does not appear to be experiencing frequent [chest pain] at present and is undergoing ECP therapy.  Seems capable of outlined activity including [standing or walking] for 2 hours/day."  R. 306-07.  She further opined that Plaintiff could occasionally lift or carry twenty pounds, could frequently lift or carry ten pounds, and that he occasionally could climb,

balance, stoop, or crouch.  R. 306-07.

On January 7, 2013, Plaintiff completed a report and stated that he could not climb stairs, that he had to change positions every thirty minutes, and that he was exhausted by driving or a little walking.  He stated that he could not walk more than a quarter mile without resting.  He reported that he grocery shopped for one or two hours once per week, that he went to church once a week, and that he could go out alone.  He stated that he could manage his money and that he mostly stayed home and watched television.  R. 185-93.

On January 24, 2013, Toni Martin, M.D., a medical consultant for DDS, conducted a second review of Plaintiff's records.  Dr. Martin largely agreed with Dr. Lee's October 2012 opinion regarding Plaintiff's limitations, but assessed additional restrictions on exposure to extreme cold, extreme heat, and environmental hazards. R. 315-16.

On March 8, 2013, Dr. Johnson, the cardiologist at Non-Invasive Cardiovascular who had prescribed Plaintiff's ECP treatments, completed a capacity questionnaire on a form headed "Prudential Financial," presumably supplied by Plaintiff's employer.  R. 317-18.  In response to questions on the forms, Dr. Johnson opined that Plaintiff had neither full-time nor part-time work capacity.  In response to a question regarding when Plaintiff could return to full-time work, Dr. Johnson wrote

"unknown."   He stated that Plaintiff lacked the capacity to stand, walk, or sit continuously for eight hours, and that vocational rehabilitation would not benefit Plaintiff's ability to return to work.   When asked the source of his opinions, Dr. Johnson checked boxes for Plaintiff's "self-reported severity of symptoms" and for "objective findings."   However, the record contains no evidence that Dr. Johnson had treated or examined Plaintiff since the ECP treatments in October 2012, approximately four months prior.

On April 16, 2013, Plaintiff returned to Dr. Haque, his family practitioner, for an annual check-up to follow up on his hypertension and angina. R. 367-71.  As stated above, this is the first record of medical treatment since Plaintiff's ECP treatments in October 2012.

At the April 16, 2013, appointment, Dr. Haque reported that Plaintiff complained of intermittent chest pain but denied palpitations, shortness of breath, and syncope.   Dr. Haque authorized refills for Plaintiff's prescriptions.   His records continue to recite that Plaintiff "refuse[s] to go to hospital" for unstable angina.  R. 369.   At a follow-up visit on September 4, 2013, Dr. Haque reported that Plaintiff complained of increasing shortness of breath, exhaustion, and weight gain, and that he had not seen his cardiologist for over one year.  R. 365-66.

On September 14, 2013, Dr. Haque completed the same Prudential Financial

capacity questionnaire that Dr. Johnson had completed in March.  R. 440-41.  Dr.

Haque opined that Plaintiff was unable to work either full- or part-time and could not

stand, walk, or sit for eight hours.  When asked about other restrictions for Plaintiff,

Dr. Haque wrote, "Patient incapacitated.  Total[] & permanent."  R. 441.  He checked

boxes indicating that his opinion was based on Plaintiff's self-reported symptoms and

on objective findings.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing of the existence of an element essential to the

party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v.*

*ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV.

P.  56(a).  *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529

F.3d 335, 339 (5th Cir. 2008).  "An issue is material if its resolution could affect the

outcome of the action.  A dispute as to a material fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole and, second, whether the Commissioner applied the proper legal standards to evaluate the evidence. *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is more than a mere scintilla and less than a preponderance. *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present. *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2)

diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272. In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

Social Security disability insurance benefits are authorized by Title II of the Social Security Act. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. 42 U.S.C. § 423(c) & (d). "Disability" is defined as the inability to "engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

### B.   Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.  *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.[4]  The claimant has the burden to prove disability under the first four steps.  *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619. If the claimant successfully carries this burden, the burden shifts to the Commissioner at Step Five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.  *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.  Once the Commissioner

---

[4]     The Commissioner's analysis at Steps Four and Five is based on the assessment of the claimant's residual functional capacity ("RFC"), that is, the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

makes this showing, the burden shifts back to the claimant to rebut the finding. *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

In this case, the ALJ determined at Step One that Quazi had not engaged in substantial gainful activity since his alleged onset date of June 5, 2012. At Step Two, she found that Quazi had three severe impairments: coronary atherosclerosis, unstable angina, and psoriasis. At Step Three, however, she found that Quazi's impairments, considered singly or in combination, did not meet or medically equal an impairment listed in the Social Security regulations.

Before proceeding to Step Four, the ALJ considered Quazi's residual functional capacity ("RFC") and concluded that he had the RFC to perform light work, with additional restrictions:

> [Quazi] has the [RFC] to perform light work . . . . except that he cannot climb ropes, ladders, or scaffolds. He cannot work in temperature extremes. He can climb stairs and ramps, stoop, squat, crawl, and kneel occasionally.

R. 19. At Step Four, the ALJ determined that Quazi was capable of performing his past relevant work as a sales manager. She therefore concluded that Quazi was not under a disability between June 5, 2012, through January 29, 2014, the date of her decision.

### C.    **Plaintiff's Argument for Reversal**

Plaintiff argues that the ALJ erred because she failed to weigh the medical opinion evidence in accordance with *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). In particular, Plaintiff argues that the ALJ improperly discounted the opinions of Dr. Johnson, the cardiologist who prescribed ECP treatments, and Dr. Haque, Plaintiff's family doctor.   Each doctor completed a capacity questionnaire on a form from Prudential Financial ("Capacity Questionnaire") and opined that Plaintiff had neither full- nor part-time work capacity, and that he was not capable of sitting, standing, or walking for an eight-hour period.  *See* R. 317-18 (Dr. Johnson, March 2013); R. 440-41 (Dr. Haque, September 2013).  *See also*  R. 292 (on August 6, 2012, Dr. Johnson stated that Plaintiff's inability to return to work was of "indefinite" duration).  The ALJ gave the two opinions on the Capacity Questionnaires "very little weight." R. 21.

An ALJ is legally required to evaluate every medical opinions she receives, and to consider certain factors when deciding how much weight to give the medical opinion.  20 C.F.R. § 404.1527(c). Clear Fifth Circuit precedent requires an ALJ to give "controlling weight" to the opinion of a treating medical source's opinion, *if* the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent" with other substantial evidence in the record. *Newton*, 209 F.3d at 455 (internal quotation marks and citations omitted).  *See* 20

C.F.R. § 404.1527(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Giles v. Astrue*, 433 F. App'x 241, 246 (5th Cir. 2011). A specialist's opinion about medical issues within his or her area of speciality is afforded greater weight than a generalist's opinion. *Id.* *See* 20 C.F.R. § 404.1527(c)(5). Nevertheless, a treating physician's opinion is not conclusive, and the decision regarding the claimant's status rests with the ALJ. *Greenspan*, 38 F.3d at 237.

An ALJ may discount the weight given to a treating physician's opinion for "good cause" when the treating physician's statements are brief and conclusory, are not supported by medically acceptable clinical, laboratory, or diagnostic techniques, or are otherwise unsupported by the evidence. *Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456. *See Giles*, 433 F. App'x at 246. Relevant factors regarding the proper weight to give to a medical opinion are: the physician's length of treatment of the claimant; the physician's frequency of examination; the nature and extent of the treatment relationship, the support of the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the medical record, and the physician's specialization. *Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; 20 C.F.R. § 404.1527(c).

In this case, the ALJ concluded that the opinions expressed by Dr. Johnson and Dr. Haque on the Capacity Questionnaires were entitled to "very little weight." R. 21.

The ALJ acknowledged the weight afforded to treating physicians' opinions under the regulations, and then listed multiple reasons supporting her decision to discount the physicians' opinions, including the following:

- "The opinions are not consistent with other substantial evidence including the treating records and the claimant's activities of daily living."  R. 21.

- "[T]he assessments are not function-by[-]function assessments in that there is no opinion of how long the claimant can stand, walk or sit."  R. 21

- "Opinions on[] whether or not the claimant can work are not entitled to any probative weight."  R. 21.

- Regarding the record evidence supporting the opinions, the ALJ stated, "Since [Plaintiff's] stenting in 2012 there have been very little problems and no reported difficulties since [Plaintiff] completed the [ECP] therapy. [Plaintiff's] restrictions appear to be based more on [Plaintiff's] self-reports than on any objective clinical findings."  R. 21.

Plaintiff argues that the ALJ's determination did not comport with Fifth Circuit directives under *Newton*.

Plaintiff is correct that *Newton*  and its progeny favor the opinions of treating physicians over non-examining physicians, and furthermore that *Newton* affords greater weight to the opinion of a treating specialist in the relevant medical field, such as Dr. Johnson in this case.  Nevertheless, as Plaintiff's argument acknowledges, *Newton* explicitly permits an ALJ to discount a treating physician's opinion if the opinion is "conclusory, is unsupported by the medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."

*Newton*, 209 F.3d at 456.  *See* 20 C.F.R. § 404.1527(c).  In this case, the ALJ concluded that the opinions expressed on the Capacity Questionnaires were not supported by the doctors' own records.  R. 21 (finding that the opinions were "not consistent with other substantial evidence, ***including the treating records***") (emphasis added).  The ALJ relied on the fact that the record contained "minimal evidence of medical treatment after July 2012," when Plaintiff had his catheterization, other than the ECP treatments from August through October 2012.  R. 20.  She noted that, at Plaintiff's checkups with Dr. Haque in April 2013 and September 2013, his physical examinations were "essentially normal."  R. 20-21.  Moreover, Dr. Haque's records from the September 4, 2013 examination reflect that, at that time, Plaintiff had not seen his cardiologist for ***over one year***, a substantial amount of time that was entirely within the relevant period.  *See* R. 365.  *See Newton*, 209 F.3d at 456 (SSA regulations require an ALJ to consider "the physician's frequency of treatment" as one factor when assessing the weight to be given to a treating physician's opinion).  The ALJ thus concluded that Plaintiff's restrictions listed in the Capacity Questionnaires appeared "to be based more on [Plaintiff's] self-reports than on any objective clinical findings."  R. 21.

Given the unremarkable physical examinations in the record after July 2012 and the gaps in treatment noted by the ALJ, the ALJ's determination is supported by

substantial evidence.  *See Audler*, 501 F.3d at 447 ("substantial evidence" is relevant

evidence that a reasonable mind might accept as adequate to support a conclusion);

*Perez*, 415 F.3d at 461 (substantial evidence is more than a mere scintilla and less than

a preponderance).  The Fifth Circuit has held that the ALJ "is free to reject the opinion

of any physician when the evidence supports a contrary conclusion."  *Martinez*, 64

F.3d at 176.  *See Avery v. Colvin*, 605 F. App'x 278, 283 (5th Cir. 2015).  Ultimately,

Plaintiff must bring forward evidence of disability.  *See Perez*, 415 F.3d at 461

(claimant bears burden to prove disability under the first four steps of the ALJ's

analysis).  In this case, Plaintiff failed to do so.

Plaintiff raises multiple smaller points in support of his request for remand.  For

the reasons stated below, none of Plaintiff's arguments alter the conclusion above that

substantial evidence supports the ALJ's decision.

First, Plaintiff relies on the fact that the two Capacity Questionnaires are

consistent with each other, arguing that this fact satisfies one of *Newton*'s factors for

increased weight.  However, the *Newton* consistency factor specifically states that the

ALJ should assess the "consistency of the [treating physician's opinion] with ***the***

***record as a whole*."  *Newton*, 209 F.3d at 456 (emphasis added).   The ALJ gave the

Capacity Questionnaires little weight based on this factor—*i.e.*, their inconsistency

with the record as a whole—and, as held above, the ALJ's determination is supported

by substantial evidence.[5]

Second, Plaintiff faults the ALJ for basing her determination on the opinions of non-examining physicians who served as DDS consultants.  *See* R. 21 ("The undersigned affords these opinions great weight . . . because the opinions are consistent with the evidence of record and therefore persuasive.").  Plaintiff is correct that, in general, the opinions of non-examining physicians are entitled to less weight than treating physicians.  However, the ALJ of course is entitled to consider the opinions of non-examining physicians as well.  In this case, the ALJ's conclusion that the opinions of the DDS physicians were consistent with the record is supported by substantial evidence.

Third, Plaintiff urges remand based on the ALJ's statement that "treating physician[s] ha[ve] an obligation to be an advocate for their patients" and "[t]herefore,

---

[5]     Plaintiff further argues that the ALJ improperly cast the Capacity Questionnaires as opinions regarding employability, a type of opinion to which the ALJ need not defer, when in fact the opinions on the Capacity Questionnaires were broader than employability.  *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (determination of disability or inability to work is a legal conclusion reserved to the Commissioner)); *Brunson v. Astrue*, 387 F. App'x 459, 462 (5th Cir. 2010).  The ALJ's ruling noted that the Capacity Questionnaires did not provide a function-by-function assessment of Plaintiff's RFC and then stated, "Opinions on[] whether or not the claimant can work are not entitled to any probative weight." *See* R. 21.  *See id.* (citing SSR 96-5p).  The Court need not address this issue because it ultimately is not dispositive.  As stated above, the ALJ's fundamental reason for discounting the doctors' opinions, *i.e.*, the lack of support in the medical evidence of record, clearly is a sufficient basis for the ALJ's decision to little weight to the opinions in the Capacity Questionnaires.

the opinion of an independent medical examiner who does not have an obligation to advocate for the patent is often more objective." R. 21.  An ALJ may "reject a treating physician's opinion if he finds, ***with support in the record***, that the physician is not credible and is leaning over backwards to support the application for disability benefits."  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (internal quotation marks and citations omitted) (emphasis added).  *See Thompson v. Astrue*, 232 F. App'x 421, 424 (5th Cir. 2007).  The ALJ erred in this case because her statement is speculative, providing no citation for ***any*** evidence in the record suggesting that Drs. Johnson and Haque were improperly motivated by sympathy or other concerns when evaluating Plaintiff's condition.  *See Scott*, 770 F.2d at 485.  Nevertheless, the ALJ's error was harmless and did not affect Plaintiff's substantial rights,[6] because the ALJ's decision to discount the weight of the physicians' opinions also relied on other, independent factors that meet the substantial evidence standard.  In other words, the record contains substantial evidence supporting the ALJ's decision to discount the physicians' opinion—most fundamentally, the lack of medical evidence supporting their conclusions—despite the ALJ's improper speculation as to the physicians' motivations.

---

[6]  *See Audler*, 501 F.3d at 448 ("'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected'") (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

Finally, Plaintiff argues that the ALJ had a duty to develop the record and failed to do so.  *See Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015);  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  A court may reverse an ALJ's decision if the plaintiff demonstrates that, first, the ALJ "failed to fulfill his duty to develop the record adequately," and second, that the failure prejudiced the plaintiff.  *Sun*, 793 F.3d at 509 (internal quotation marks omitted); *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).  In this case, Plaintiff maintains that the ALJ had a duty either to re-contact Dr. Johnson or Dr. Haque for additional information, or to re-contact the non-examining physicians to re-review the complete record, or to order a consultative examination or review by a medical expert.  However, Plaintiff has failed to establish that further development of the record was necessary for the ALJ to make a determination.  *See Sun*, 793 F.3d at 509 (the ALJ has a duty to develop all relevant facts, not to collect all existing records); *Brock v. Chater,* 84 F.3d 726, 728 (5th Cir.1996) (an ALJ is only required to order a consultative examination when such additional evidence is "necessary to enable the ALJ to make the disability determination").  Moreover, Plaintiff clearly has failed to establish prejudice, as he has offered no evidence that any of additional records he identifies might have altered the result.  *See Jones*, 691 F.3d at 734-35; *Carey*, 230 F.3d at 142.  In fact, Plaintiff has cited to no medical evidence demonstrating that his condition worsened after the review by non-

examining consultants.  "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient" to show prejudice. *Jones*, 691 F.3d at 735.[7]

In conclusion, none of Plaintiff's asserted grounds alter the holding that the ALJ's determination was supported by substantial evidence.  At bottom, the large gaps in Plaintiff's medical treatment during the relevant period, and the lack of medical evidence to support the physicians' conclusions in the Capacity Questionnaires, provide sufficient support for the ALJ's determination that the opinions should be discounted.  The ALJ amply demonstrated good cause for her assignment of "little weight" to the medical opinions relied upon by Plaintiff, and her stated reasons comport with *Newton* factors including supportability, consistency with the record as a whole, and frequency of treatment.   *See Newton*, 209 F.3d at 456.

The ALJ's decision was supported by substantial evidence and must be affirmed.  *Perez*, 415 F.3d at 461.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

---

[7]    Plaintiff urges additional grounds for remand, including that the Plaintiff's strong work history should have altered the ALJ's assessment of Plaintiff's credibility, and that the ALJ improperly weighed the evidence regarding Plaintiff's activities of daily living.  The Court need not address these arguments because, even if Plaintiff were correct, substantial evidence supports the ALJ's decision for all of the reasons held above.

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 10] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 12] is **GRANTED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **27<u>th</u>** day of **June, 2015**.